**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MELISSA MOSHER,<br>    Plaintiff, | No. 3:17-cv-1252 (SRU) |
| v. | |
| YMCA OF METROPOLITAN<br>HARTFORD,<br>    Defendant. | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Melissa Mosher ("Mosher") filed suit alleging the following seven counts against her former employer, YMCA of Metropolitan Hartford ("YMCA"): pregnancy discrimination (Count I); failure to provide a reasonable leave of absence for a disability resulting from pregnancy (Count II); retaliation (Count III); disability discrimination (Count IV); failure to accommodate (Count V); interference in violation of the FMLA (Count VI); and retaliation pursuant to the FMLA (Count VII).

YMCA moved for summary judgment on all claims. Motion for Summary Judgment, Doc. No. 39. For the reasons set forth below, YMCA's motion for summary judgment is **GRANTED** on all seven counts.

## I.    Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.    Background

Melissa Mosher was employed as a membership sales director with a health club called Club Longitude. Def's Local Rule 56(a)(1) Statement of Undisputed Material Facts, at ¶ 1 ("Undisputed Facts"). In the fall of 2015, YMCA bought the Club Longitude space. *Id.* at ¶ 2. Mosher and other Club Longitude employees applied for positions at YMCA. *Id.* Mosher was hired as a membership director at YMCA and began her employment in November 2015. *Id.* at ¶¶ 3-4. She reported to Executive Director Rick Hersom and Supervisor Tim Moore. *Id.* at ¶ 5.

In January 2016, Mosher informed her supervisors, Hersom and Moore, that she was pregnant with triplets. *Id.* at ¶ 9. She applied for FMLA leave beginning July 16, 2016. *Id.* at ¶ 10. Mosher was initially denied FMLA leave because the Human Resources advisor, Cote, determined she was ineligible: she had not worked for YMCA for the required 12 months and had not completed the necessary 1,000 hours of service. *Id.* at ¶ 12. YMCA asserts that its policy is to provide eligible employees with 16 weeks of FMLA leave, per Connecticut's FMLA. *Id.* at ¶ 11. Mosher, however, states that YMCA's policy is to grant a *minimum* of 16 weeks CFMLA

leave. Pl's Local Rule 56(a)(2) Statement at ¶ 11 ("Rule 56(a)(2) Statement"). The parties agree

that Cote approved Mosher for a medical leave of approximately six to eight weeks. Undisputed

Facts at ¶ 11.

YMCA contends that on or about April 4, 2016, Mosher "stopped coming to work"

because of her pregnancy. *Id.* at ¶ 16. Mosher states that she was "incapable of coming to work"

and was medically restricted from working. Rule 56(a)(2) Statement at ¶ 16. The parties agree

that on April 28, 2016, Mosher contacted Cote and informed Cote that someone at the U.S.

Department of Labor had told Mosher that she was eligible for FMLA leave because YMCA was

the successor in interest to Club Longitude. Undisputed Facts at ¶ 17. On May 5, 2016, Cote

informed Mosher that she did in fact qualify for FMLA leave, and she was approved for 16

weeks of FMLA leave from April 6, 2016 through July 26, 2016. *Id.* at ¶¶ 18-19. YMCA states

that although it had initially denied Mosher's leave, "it reversed that decision and approved her

leave with no prejudice to her." *Id.* at ¶ 20. Mosher asserts that, although YMCA eventually

approved her FMLA leave, "it did so only reluctantly, and was displeased" to do so. Rule

56(a)(2) Statement at ¶ 20. The parties agree that Mosher was required to provide weekly reports

of her status and intent to return to work. Undisputed Facts at ¶ 21. The parties dispute whether

or not Mosher submitted those medical notes. *Id.* at ¶ 32, Rule 56(a)(2) Statement at ¶ 32. The

parties agree that on May 20, 2016, Mosher gave birth to triplets. *Id.* at ¶ 25. The parties do not

dispute that, although Mosher originally applied for leave beginning July 16, 2016, her leave

actually began earlier, on April 6, 2016. *Id.* at ¶¶ 18-19.

In July 2016, Mosher applied for long-term disability benefits from Sun Life Insurance.

*Id.* at ¶ 33. YMCA contends that as part of the application, Mosher's doctor certified that she

could return to work full-time with no restrictions on August 1, 2016. *Id.* Mosher states that the

4

August 1 date was merely an estimated return to work date. Rule 56(a)(2) Statement at ¶ 33.

Mosher's application for long-term disability benefits was denied. Undisputed Facts at ¶ 33. She

reapplied and was denied again. *Id.* She did not appeal the decision. *Id.*

YMCA contends that Cote attempted to contact Mosher "numerous" times and left

messages for her, but Mosher did not inform YMCA of her return to work status and did not

submit any updated medical notes regarding her leave. *Id.* at ¶ 32. Cote and Mosher spoke on

July 8, 2016, and Mosher asked to extend her leave until September. *Id.* at ¶ 33. Cote asked

Mosher to attend an in-person meeting on July 19, 2016, to discuss the extension request and

YMCA's upcoming restructuring of positions. *Id.* at ¶ 34.

YMCA's senior leadership team met in June and July 2016 to discuss restructuring job

duties for some positions, as a result of a proposed Department of Labor rule that would require

YMCA to raise employees' salaries to maintain exemption from federal overtime laws. *Id.* at ¶¶

26-31. The team discussed eliminating six Membership Director positions and replacing them

with three Regional Membership Director positions as a result of the proposed Department of

Labor rule. *Id.*

When Mosher met with Executive Director Rick Hersom, Vice President of Human

Resources Lori Lehan, and Chief Operating Officer Nichol Higdon on July 19, 2016, she

requested additional time off. *Id.* at ¶ 39. YMCA asserts that Mosher did not discuss any medical

issues involving her or her triplets and stated that she needed the additional time to enable her to

find childcare. *Id.* at ¶¶ 38-39. Mosher contends that she did not portray childcare issues as the

sole reason for the request. Rule 56(a)(2) Statement at ¶ 39. YMCA contends that Hersom,

Leghan and Higdon offered to extend Mosher's leave by at least one additional week.

Undisputed Facts at ¶ 40. Mosher counters that they stated that there would be no possibility of

extending leave beyond one week. Rule 56(a)(2) Statement at ¶ 40. The parties agree that

Hersom, Lehan and Higdon also explained that YMCA would be restructuring, eliminating some

positions and creating others. Undisputed Facts at ¶ 42. They stated that the Membership

Director position would likely be eliminated and that YMCA would likely establish Regional

Membership Director positions instead. *Id.* YMCA states that Mosher did not express any

interest in that position. *Id.* at ¶ 43. Mosher asserts that in fact, she was not capable of performing

that position, or any other positions, when she was notified of the position in mid-July 2016.

Rule 56(a)(2) Statement at ¶ 43.

YMCA states that Lehan understood that Mosher's short-term disability benefits would

soon end if they hadn't ended already, so Lehan offered Mosher the option of self-selecting for

layoff so that she could continue to collect unemployment and continue to receive some income.

Undisputed Facts at ¶ 44. YMCA states that Mosher was told that if she chose the self-selecting

layoff option, she could resign and then reapply to work at YMCA again in the fall. *Id.* at ¶ 44.

Mosher, however, asserts that she was given only a "Hobson's choice between returning to work

without the time off to recover from childbirth…and being terminated." Rule 56(a)(2) Statement

at ¶ 44. Mosher further argues that she was "terminated with a vague invitation to apply for

'future openings'" and that there is "no evidence that [Mosher] failed to apply for any specific

open position or that [Mosher] was told she would be hired for any opening if she did apply." *Id.*

at ¶ 45.

YMCA contends that it gave Mosher "some time" to review the options discussed at the

meeting and to contact Lehan when she had made a decision. Undisputed Facts at ¶ 46. Mosher

states that she was given "a day or two" to decide what to do. Rule 56(a)(2) Statement at ¶ 46.

YMCA states that on July 22, 2016, Mosher told Lehan that she would accept the layoff.

Undisputed Facts at ¶ 47. Mosher argues that she did not voluntarily accept the layoff, but rather told Lehan that she would need to take the layoff even though she didn't want to because she could not physically return to work. Rule 56(a)(2) Statement at ¶ 47.

YMCA asserts that after Mosher self-selected layoff, YMCA sent her a letter memorializing the conversation and Mosher's decision to self-select termination. Undisputed Facts at ¶ 48. YMCA further asserts that, during the July 19 conversation, it had offered to extend Mosher's leave by three weeks. Undisputed Facts at ¶ 48. Mosher, however, states that the offer to extend leave was not an actual offer, but rather an "after-the-fact characterization" of a phone call between Lehan and Mosher on July 22, during which time Lehan "made no such offer." Rule 56(a)(2) Statement at ¶ 49. Mosher also points out that by the time the letter was issued on August 4, YMCA had already terminated Mosher's employment (on July 25, 2016). *Id.*

YMCA asserts that employees who opted not to apply or interview for open positions were laid off, including Sally Miller, an Associate Executive Director, and Tracy Forbes, a Membership Director. Undisputed Facts at ¶ 55. Mosher argues that although those facts regarding other layoffs are true, any implication that other staff were treated in the same way as Mosher is false. Rule 56(a)(2) Statement at ¶ 55. Mosher asserts that the other employees were laid off in October 2016, when their jobs were actually eliminated, rather than in July 2016, at the time Mosher was laid off. *Id.*

After she left YMCA, Mosher found another, higher paying job. Undisputed Facts at ¶ 56. Mosher asserts, however, that she did not find a new job quickly, easily, or without trouble or difficulty. Rule 56(a)(2) Statement at ¶ 56. Mosher states that she spent three to four hours every day for eight months looking for another job before being hired by another company. *Id.* She left that job four months later, when one of her children became ill. Undisputed Facts at ¶ 56.

7

Mosher filed a complaint in state court on June 27, 2017, and the case was removed to federal court on July 26, 2017. Compl., Doc. No. 1. On October 5, 2018, YMCA moved for summary judgment. Doc. No. 39. Mosher responded on November 30, 2018. Doc. No. 44. YMCA filed a reply in support of its motion for summary judgment on December 14, 2018. Doc. No. 45. I held a hearing on the motion for summary judgment on April 24, 2019.

## III.    Discussion

Mosher's main argument, as it relates to all seven counts, hinges on the fact that she was denied a reasonable accommodation due to a disability she suffered as a result of her pregnancy. But because Mosher fails to provide evidence that she had any known disability as a result of her pregnancy at the time she requested additional leave from YMCA, her arguments fail, and YMCA is entitled to summary judgment on all counts.

1. *Failure to provide a reasonable leave of absence for a disability resulting from pregnancy (Count II)*

Section 46a-60(b)(7)(B) of the Connecticut General Statutes states that it is discriminatory practice to "refuse to grant to [an] employee a reasonable leave of absence for disability resulting from her pregnancy[.]" *Id.* Mosher argues that YMCA failed to provide her with a reasonable leave of absence for a pregnancy-related disability as required by Conn. Gen. Stat. § 46a-60(b)(7)(B). YMCA argues that it is entitled to summary judgment as a matter of law on Count Two for two reasons: (1) it did not refuse to grant Mosher a reasonable leave of absence, and (2) when Mosher opted to accept a layoff, she did not have a pregnancy-related disability. Def's Brief, Doc. No. 39-1, at 10.

8

a. Did Mosher suffer from a pregnancy-related disability?

Under the CFEPA, "'[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." Conn. Gen. Stat. § 46a-51(15). Pregnancy and pregnancy-related symptoms are not classified as a disability under the CFEPA. *Phadnis v. Great Expression Dental Centers of Connecticut, P.C.*, 170 Conn. App. 79, at 85 n.1 (2017).

YMCA argues that because Mosher did not have a "chronic physical handicap, infirmity or impairment" she did not suffer from a pregnancy-related disability. Def's Brief, Doc. No. 39-1, at 16. Mosher argues that Conn. Gen. Stat. § 46a-60(b)(7) is a "generous statutory scheme" which, "taken as a whole…demonstrates a comprehensive intent to allow women affected by childbirth and related conditions to continue in their jobs." Pl's Mem. Supp. Objection to Def's Motion for Summary Judgment ("Pl's Brief"), Doc. No. 44-1, at 23. Mosher argues that she had a "complete inability to work at the time she was terminated" which resulted in a "disability resulting from pregnancy." *Id.*

Mosher does not, however, allege any specific disability or condition that she suffered as a result of her pregnancy. Mosher's doctor certified that Mosher would be able to return to work full-time with no restrictions on August 1, 2016. Ex. 11, Doc. No. 39-3, at MOSHER000006-7. Although Mosher is correct that the August 1 date was merely an "estimated" return to work date, Rule 56(a)(2) Statement at ¶ 33, she provides no evidence to support the contention that she knew, at the meeting on July 19, that she would need additional time before returning to work, after August 1, for a reason related to a medical disability. Although Mosher argues that she "had a hematoma which required surgery and an inability to use her legs fully", she did not know

9

about the hematoma at the time that she requested additional leave. Ex. 1, Mosher Deposition, Doc. No. 39-4, at 100:7–101:3. She did not provide any other reason that she would be required to remain out of work for a reason related to a medical disability.

Mosher provides no evidence that she suffered from a pregnancy-related disability for which she required a reasonable accommodation in the form of additional leave time beyond the 16 weeks provided by YMCA. Thus, the issue becomes whether the 16 weeks that YMCA provided was a reasonable leave period.

b. Was the 16-week leave of absence reasonable?

YMCA states that Mosher's 16-week leave of absence was "reasonable as a matter of law." *Id.* To support its contention, YMCA cites a case from the Eastern District of New York stating that an employer's policy providing three months of maternity leave is "reasonable as a matter of law." *Id.* (citing *Morrissey v. Symbol Techs., Inc.*, 910 F. Supp. 117, 121 (E.D.N.Y. 1996)). In addition, a three month leave of absence period is prescribed under the Family and Medical Leave Act (FMLA). *See* 29 U.S.C. § 2612. Given that YMCA allowed Mosher 16 weeks, which was more than the number of weeks deemed reasonable under the FMLA, and allowed her one more week away from work when she requested additional time, the length of time is reasonable as a matter of law. Mosher has provided no evidence to the contrary.

The parties dispute exactly how much more leave time YMCA offered Mosher at the July 19 meeting, and on what date she would be expected to return to work. At the April 24, 2019 hearing, Mosher's counsel argued that Mosher was offered at least one additional week from the July 19 meeting date rather than one week from the previously agreed upon July 26 return date. However, during her deposition, Mosher admitted that she knew that she would be expected to return to work in early August rather than at the end of July. Ex. 1, Mosher Deposition, Doc. No.

39-4, at 92:19–93:1. Accordingly, because Mosher admitted to understanding that YMCA

expected her to return in early August, there is no reasonable dispute about that fact.

In addition, the parties dispute whether Mosher was offered one additional week or three

additional weeks. Rule 56(a)(2) Statement at ¶ 49. Because the offer of at least one additional

week would have required Mosher to return to work after August 1, the estimated date that she

would be physically able to return to work with no restrictions, *see* Ex. 11, Doc. No. 39-3, at

MOSHER000006-7, the dispute about whether YMCA offered three additional weeks in a letter

to Mosher after the July 19 meeting or merely one additional week is not material. *Anderson*, 477

U.S. at 247–48. Therefore, viewing the facts in the light most favorable to the nonmoving party,

Mosher, by assuming that YMCA offered only one additional week instead of three, the amount

of leave time available still was not unreasonable.

Because Mosher provides no evidence that she was denied a reasonable leave of absence

for a pregnancy-related disability, summary judgment is granted with respect to Count Two.

2. *Pregnancy Discrimination (Count I)*

Mosher argues that her pregnancy, and YMCA's failure to grant her the leave she needed,

were the reasons for her termination, in violation of Conn. Gen. Stat. § 46a-60(b)(7)(A). That

section states that it is discriminatory practice to "terminate a woman's employment because of

her pregnancy[.]" Conn. Gen. Stat. § 46a-60(b)(7)(A).

YMCA argues that Mosher's claim fails as a matter of law because (1) YMCA did not

actually terminate Mosher's employment; (2) the evidence that Mosher provides does not create

an inference of pregnancy discrimination, and (3) YMCA identified a legitimate,

nondiscriminatory reason for her termination. Def's Mem. Supp. Motion for Summary

Judgment, ("Def's Brief"), Doc. No. 39-1, at 10-13.

Pregnancy discrimination claims are generally analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gaither v. Stop & Shop Supermarket Co. LLC*, 84 F. Supp. 3d 113, 116 (D. Conn. 2015). "Under *McDonnell Douglas,* a plaintiff establishes a prima facie case of discrimination by showing that: (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone "substantially younger[.]" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (internal citation omitted). However, where a plaintiff is able to produce direct evidence of discrimination, the *McDonnell* framework does not apply, and the legal question becomes simply "whether th[e] termination was prohibited by the CFEPA." *Id.* Mosher argues that I should not apply the *McDonnell Douglas* framework and should instead follow the same logic applied in *Gaither*. Pl's Brief, Doc. No. 44-1, at 25. YMCA argues that I should apply the "burden-shifting framework" of *McDonnell Douglas* because Mosher does not show direct evidence that YMCA discriminated against her. Def's Brief, Doc. No. 39-1, at 9.

Regardless of which framework I use to analyze the discrimination claim, Mosher's argument fails. She does not show evidence of direct discrimination, as required by *Gaither*, and she does not demonstrate that an adverse action occurred under circumstances giving rise to an inference of discrimination, as required under the *McDonnell Douglas* framework.

Mosher attempts to show evidence of direct discrimination under *Gaither* by analogizing the fact that "[YMCA] refused [Mosher's] request for said additional time, and ultimately made the insufficient token offer of one additional week, despite its own policies which specifically allowed Plaintiff more time" with *Gaither*, where the defendant, Stop & Shop Supermarket,

12

terminated the pregnant plaintiff because at the time of her termination, she was pregnant and

unable to lift objects greater than 15 pounds. *Gaither*, 84 F. Supp. 3d at 115.

However, the two cases have a crucial distinction: in *Gaither*, the defendant terminated

the plaintiff because she was "unable to fulfill the requirements of her job description relative to

lifting." *Id.* The plaintiff could not lift boxes heavier than 15 pounds because of her pregnancy.

*Id.* The defendant would not allow the plaintiff to take medical leave, and instead told her that

she would be welcome to return to the company when she was ready, but the plaintiff was told

that she would need to reapply and that there was no guarantee that there would be an open

position or that she would be rehired. *Id.* at 115-16.

In the present case, however, Mosher did not demonstrate that she needed additional time

off for a specific reason related to her pregnancy. Section 46a-60(b)(7)(B) contains a provision

mandating that a disabled pregnant woman is entitled to a reasonable leave of absence. In order

for that rule to apply, however, the plaintiff must in fact be disabled. *Id.*

Unlike in *Gaither*, where the plaintiff could not lift heavy boxes and needed a reasonable

accommodation, the fact that Mosher wanted additional time off, beyond the 16 or 17 weeks that

she was offered, does not provide evidence that she was denied a reasonable accommodation.

YMCA's denial of Mosher's request for additional leave time beyond 17 weeks does not

demonstrate direct discrimination or create an inference of discrimination because YMCA did

not have reason to believe that Mosher required extended leave due to disability. Accordingly,

summary judgment is granted with respect to Count One.

### 3. *Disability Discrimination (Count IV)*

It is a discriminatory practice for an employer "to discharge from employment any

individual …because of the individual's…physical disability." Conn. Gen. Stat. § 46a-60(b)(1).

Because Mosher does not show that that she was disabled within the meaning of the CFEPA (see section above regarding reasonable accommodation) summary judgment is granted with respect to Count Four.

4. *Failure to Accommodate (Count V)*

Mosher argues that YMCA failed to provide her with the leave she needed "to recover from childbirth" in violation of Conn. Gen. Stat. § 46a-60(b)(7)(G) (an employer may not "fail or refuse to make a reasonable accommodation for an employee…due to her pregnancy"). Pl's Brief, Doc. No. 44-1, at 32. She further argues that Conn. Gen. Stat. § 46a-60(a)(2) specifically identifies "time off to recover from childbirth" as a reasonable accommodation." *Id.*

For the reasons discussed in the sections above regarding Mosher's failure to demonstrate that she required leave beyond the 16 weeks provided to her, YMCA's motion for summary judgment is granted with respect to Count Five.

5. *FMLA Retaliation (Count VII)*

FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009). To make a prima facie showing of retaliation, a plaintiff must establish: "(1) she exercised her rights protected under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* "Under this test, 'the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to articulate a clear, specific and non-discriminatory reason for its

14

actions.'" *Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, 2013 WL 6230092, at \*17 (D. Conn. Dec. 2, 2013), *aff'd,* 588 F. App'x 41 (2d Cir. 2014).

Even if Mosher could establish a prima facie showing of retaliation, YMCA has demonstrated a non-discriminatory reason for its actions: at the time that Mosher requested additional leave time, both Mosher and YMCA did not know that Mosher was suffering from a pregnancy-related medical condition, and had no reason to believe that Mosher required extended leave due to disability. Mosher has offered no evidence to suggest the proffered reason was a pretext for FMLA retaliation. Therefore, YMCA's motion for summary judgment is granted with respect to Count Seven.

### 6. *CFEPA Retaliation (Count III)*

It is a discriminatory practice for an employer to "discriminate against any person because such person has opposed any discriminatory employment practice." Conn. Gen. Stat. § 46a-60(b)(4).[1]

As discussed above, Mosher has not demonstrated that YMCA discriminated against her as a result of her pregnancy. Accordingly, summary judgment is granted with respect to Count Three.

### 7. *FMLA Interference (Count VI)*

Mosher argues that YMCA terminated her employment rather than allowing her to return from leave, in violation of her rights under the FMLA. Pl's Brief, Doc. No. 44-1, at 38. YMCA argues that Mosher was not denied any benefits to which she was entitled under the FMLA. Def's Brief, Doc. No. 39-1, at 27.

---

[1] At the time the complaint was filed, the statute was Conn. Gen. Stat. § 46a-60(a)(4), but it is now Conn. Gen. Stat. § 46a-60(b)(4).

"[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

The only prong at issue is whether Mosher was denied benefits to which she was entitled under the FMLA. For the reasons set forth above, Mosher was not denied leave to which she was entitled because she was entitled to 12 weeks away from work under the FMLA and received 16 weeks, with the option to take at least one additional week away from work. Accordingly, summary judgment is granted with respect to Count Six.

8. *Back Pay, Front Pay, or Reinstatement*

Mosher argues that she can state a claim for back pay and front pay or reinstatement because she did not resign from her job at YMCA and she met her duty to mitigate. But because summary judgment is granted on all counts, I need not reach that issue.

## IV.    Conclusion

For the reasons set forth above, summary judgment is granted in favor of YMCA with respect to all seven counts of Mosher's complaint. The clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of May 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge